In the Matter of the Application of IRVING DOLEN, Appellant, for an Examination of Voting Machines and Correction of Returns, etc., Pursuant to the Provisions of the Election Law.

LOUIS J. LEFKOWTIZ, Respondent. ·

First Department, December 17, 1928.

*Isaac Ringel* of counsel [*Edward Weinfeld* with him on the brief], for the appellant.

*A. S. Gilbert,* for the respondent.

FINCH, J. From an order denying appellant's application for a reinspection of the vote recorded on voting machines used in three election districts of an Assembly district and directing the correction of the canvass returns and errors and discrepancies, if any, appearing thereon, this appeal is taken.

The order must be reversed and an inspection permitted. Where the closeness of the vote is coupled with proof of discrepancies, the discretion vested in the court by the Election Law should be exercised so that doubt and lack of confidence in the result may be removed.

Out of approximately 15,000 votes cast the opponent of petitioner was declared elected by a recanvass of the board of election by 12 votes. Petitioner now asks that the voting machines may be re-examined in three election districts, in order that a rereading of the machines may be compared with the canvass returns for the following reasons: In the sixteenth election district the recorded votes show an excess of 10 over the number indicated on the machine as having voted. According to the machine, 467 persons voted, but the recorded figures in the canvass return show a total of 477 votes, including 461 votes for the various candidates and 16 blanks. The inspectors of election apparently entered the figures " 451 " as the total of all votes cast for candidates for Assembly, instead of the figures " 461." It may well be that this is the extent of the error. The parties dispute as to the cause of the discrepancy. That there is a discrepancy must be admitted, and where the vote is so close as to cause an error in any one machine to be sufficient to

change the result, a case is presented calling for the favorable exercise of the court's discretion.

In the twenty-sixth election district there were two voting machines and two canvass sheets, which contain the statement of the votes registered on each of said machines. Each of these canvass sheets shows that the vote on each of the machines was exactly the same figure for the successful candidate, namely, 105. It is possible to read one canvass sheet as originally showing the figures 110 opposite the name of the successful candidate and that these figures were subsequently changed and certified as 105. There is, therefore, a change in the figures of the vote and a result is produced which appears most unusual though perhaps a mere coincidence. Also in the twenty-sixth election district the total vote certified on the canvass sheets for *every one* of the other candidates on the Democratic ticket, except petitioner, is no less than 538 and runs up to 582, whereas petitioner is certified as having only 453. *All* the other candidates on the ticket with the opponent of petitioner are certified as having from 84 to 123 votes, whereas petitioner's opponent received 210 votes. In the twenty-eighth election district *every one* of the other candidates on the ticket with petitioner received from 448 to 486 votes, whereas petitioner received only 382 votes. Likewise *every one* of the candidates on the ticket with petitioner's opponent received from 143 to 164 votes, but petitioner's opponent received 235 votes. While the office of Assemblyman was at the bottom of the ticket, and while it is well known that the names of persons heading the ticket receive more votes than those lower down on the ticket, yet it is unusual for an Assemblyman to receive so many less votes than each and every one of the candidates of his party and, on the other hand, for his opponent to receive so many more votes over the votes cast for the names of each and every other candidate on the ticket with him, unless there are special circumstances, as, for instance, when the candidate lives in the particular election district, but which is not the case here. Under the Election Law as now enacted, the court in its discretion may direct the re-examination of the voting machines. (Election Law, § 333; *Matter of Barrett*, 209 App. Div. 217.) Such discretion, however, should not be exercised to permit a re-examination merely for the asking. Election day, with its elaborate program for the counting and announcing of the vote, is the day in court for the candidates, and the judgment rendered on election night should not easily be disturbed. Adherence to this principle removes any incentive for a subsequent tampering with the ballots or the machines. Where, as in the case at bar, however, the result is so close that a change of 7 votes will produce a different result in a

district where approximately 15,000 votes were cast, and there is some evidence of discrepancy, the court should not hesitate to grant a reinspection and comparison of the result recorded upon the machine with that of the canvass sheets. Perhaps it is fitting to add, here the mass action is made up of individual units who, at inconvenience to themselves, have performed a patriotic duty. The voting machine is the original record of their action. At the least a mere reinspection of the original record may do no more than dispel doubt and strengthen faith in the election machinery and human nature. At the most it will give truthful expression to the majority will. Enough has been shown to invoke the court's discretion.

It, therefore, follows that the order appealed from should be reversed and the motion granted.

DOWLING, P. J., MERRELL, McAVOY and PROSKAUER, JJ., concur.

Order reversed and motion granted. Settle order on one day's notice.